414.102

1   FRANCES K~~~~~~~ OPELLE
    56-154 Puuluana Place #57
2   Kahuku, HI 96731
    808-293-2606
3

4   FRANCES K. OPELLE, IN PRO PER

5

6

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA

8               FOR THE COUNTY OF ORANGE          30-2017

9

10  FRANCES K. OPELLE, as Pro Per        Case No.:   00920844

11              Plaintiff,              COMPLAINT FOR DAMAGES FOR:

12      vs.
                                        1. BREACH OF FIDUCIARY DUTY
13  DOUGLAS CRANE KNEUBUHL (~~~~~)       2. FRAUDULENT CONCEALMENT
14  AKA. Mike Kneubuhl

15                                       JUDGE RANDALL J. SHERMAN

16                                          C-24

17

18  _____

19              DEMAND FOR JURY TRIAL

20

21

22  DATED: May 17, 2017

23                                      _Frances K. Opelle_
                                        Frances K. Opelle
24                                      In Pro Per

25

26

27

28

                            - 1 -
                    COMPLAINT FOR DAMAGES

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAY 17 2017

DAVID H. YAMASAKI, Clerk of the Court

BY:_____DEPUTY

Jurisdiction:

This Court has per personal Jurisdiction over Defendant

Venue:

This Court is the proper venue as most actions occurred in Orange County

**Pending Litigation in American Samoa**

1. Plaintiff is a beneficiary of the 1960 Adeline Pritchard Kneubuhl Trust, hereinafter referred to as the APK Trust.

2. The APK Trust is a conveyance of lands created by APK as an allowable way for her to transfer her lands in Olo due to her children due, known as Olo due to laws of American Samoa on alienation of lands to individual of less than 50% Samoan blood restrictions.

3. The APK trust, included additional restrictions on the beneficiaries of said trust relating to any potential sale of title and / or interest.

4. In 2012, Defendants children attempted sell Plaintiff's land or interest they claimed they acquired from Plaintiff that is held under the APK Trust.

5. On July 2, 2013, a claim was filed by Robin Kneubuhl as Plaintiff with and Ben Kneubuhl and Frances Kneubuhl as Co Plaintiffs CA-NO 28-13.

6. The Defendants in CA-NO 28-13 are Defendant, and his children, Douglas Kneubuhl Jr., Carrie Sue Kneubuhl Lavigne Eckert, and Kelly Kneubuhl Nadine Fults.

7. In case CA-NO 28-13 declaratory relief was requested and the Prayer was on High Court of American Samoa to describe the nature of interests of the 1960 APK Trust for lands held in American Samoa.

8. In December of 2013, Plaintiff filed a separate claim against Defendant and his children, in American Samoa under case LT 20-13.

9. The separate claim was consolidated with case CA-NO 28-13.

10. Defendants children, Carrie Sue Eckert (AKA  Carrie Sue Lavigne) Kelly Nadine Fults, Mark Kneubuhl, and Douglas C Kneubuhl, Jr. and Defendant Mike Kneubuhl were parties to the Complaint in case LT 20-13.

- 2 -
COMPLAINT FOR DAMAGES

11. Plaintiffs prayer for relief in CA 20-13 are for lands situated in American Samoa and the relief asked by Plaintiff is to effect title and impose constructive trusts on these lands under the jurisdiction of American Samoa.

12. Plaintiffs litigation in American Samoa, arose out of concern from co beneficiaries of the APK Trust upon learning Defendants children were trying to sell title they claimed to have acquired from Plaintiff and Plaintiff was included in litigation as result of the acts of the children of Defendant; their attempted sales of property situated in Olo, under the APK trust, that they claimed to have acquired from Plaintiff.

13. Defendant has agreed in May of 2014 the claims pending in American Samoa were the result of Defendant's children attempting to sell lands they claim to have acquired from her.

14. Plaintiff's complaint and causes of action in CA 20-28 and CA -20-13 were on the knowledge and beliefs Plaintiff had at the time of filing in July of 2013 and December of 20-13, Defendant's children attempts to sell lands they claim to have acquired from Plaintiff.

15. The causes of action in this complaint occurred in Orange County, California or Riverside County, California.

16. Trial for the cases CA 20-13 and CA 28-13 was held October 6th 2015 and concluded October 8th of 2015.

17. In November of 2016, the Presiding Judge, Honorable Associate Justice Lyle Richmond went on medical leave and remains on leave.

18. No decision has been rendered in the cases in the High Court of American Samoa.

19. There have been two status updates since the Associate Justice, Honorable Lyle Richmond's leave, in February of 2017 and April of 2017.

20. The status updates provide no information to the Parties including if a decision is forthcoming or if the Associate Justice, Honorable Judge Richmond will render a decision.

21. The cases are scheduled for a third status update near the end of July 2017.

22. It is not known to Plaintiff what will happen with the cases pending in American Samoa, if a decision is forthcoming, may be forthcoming or will need to be re-scheduled for trial in American Samoa.

## GENERAL ALLEGATIONS

23. At all relevant times up until August of 2008, Plaintiff was an individual and was residing in Orange County, California.

24. At all relevant times from August of 2008 to present, Plaintiff is residing in the North Shore of Oahu.

25. Plaintiff is informed and believes and thereon alleges that at all relevant time up until approximately May of 2015, Defendant was an individual residing in Newport Beach and Balboa of Orange County, California.

26. Plaintiff is informed and believes and thereon alleges that at all relevant time, in May of 2015, Defendants was an individual residing in La Quinta, California.

27. Plaintiff is a retired homemaker, residing in Oahu with her daughter and family in the North Shore of Hawaii since August of 2008.

28. Plaintiff previously resided in Orange County, California from 1977 to August of 2008.

29. Plaintiff and her husband, William Robert Opelle, now deceased, lived next door to her son and his family in San Juan Capistrano, California beginning August of 1997.

30. In 1999, Plaintiff suffered financial hardship and in approximately July of 2000, consolidated households with her son and his wife, living together until August of 2008.

31. Plaintiff and her husband, resided with their children, predominantly since July of 2000 due to their age, health, finances and as being family. Plaintiff was approved for financial assistance at an age restricted community near her daughter where she resides approximately 2-3 days a week.

32. Defendants resided in Orange County, California, maintaining residence at Laguna Beach, followed by Newport Beach, and eventually Balboa since the mid 1970's to May of 2015 when they moved to La Quinta, California.

## STATEMENT OF FACTS

### Relationship Between Plaintiff and Defendant and Their Background

34. Plaintiff and Defendant are sister and brother, the youngest of six children by Adeline Pritchard Kneubuhl, with Defendant being approximately four years older than Plaintiff.

35. There is a large gap in age between the Plaintiff and the defendant and the four older siblings.

36. Plaintiffs four other siblings were in boarding school or college in the United States while Plaintiff and defendant were young children being raised together in American Samoa until they became of age to attend boarding school in Hawaii

37. Plaintiff developed a close relationship with Defendant as a young child due to the age gap of her four other siblings, the other four siblings being in boarding school or college in the United States while Plaintiff and Defendant were being raised together as young children in American Samoa.

38. In approximately 1957 Plaintiff was the only one of the six children at the time to return back to American Samoa after she graduated from college in the United States and married William Opelle of California to reside with her parents in American Samoa at approximately 24 years of age.

39. William Opelle began working for the father of Plaintiff at BF Kneubuhl Inc., a company owned by the parents of Plaintiff, Benjamin Kneubuhl and Adeline Prichard Kneubuhl.

40. Plaintiff's husband, eventually became Vice President of the company in the late 1950's to early 1960's.

41. In the early 1960's, Defendant returned to American Samoa after his first divorce and also began working for BF Kneubuhl alongside William Opelle.

42. In December of 1964, Plaintiffs father, Benjamin Kneubuhl passed away.

43. Between approximately the mid to the late 1960's some or all of the other four older siblings would return to American Samoa and would become active Board Members of BF Kneubuhl along with Defendant and Plaintiff.

44. Conflict and dissension would arise among the siblings, all members of the board of BF Kneubuhl between the late 1960's and be ongoing.

45. Plaintiff eventually moved from American Samoa with her children in around 1974.

46. Ultimately, William Opelle was terminated as Vice President from the Board Members in the late 1960's to early 1970's; Plaintiff would be voted off as a board member in the late 1970's, Plaintiffs mother would be voted off as a board member, and Defendant would be terminated from his position with BF Kneubuhl in the late 1970's by the older siblings and members of the BF Kneubuhl Board.

47. Plaintiff supported her older brother against the Board of BF Kneubuhl and against the four older siblings.

48. Defendant stated in May of 2014 in Orange County that his sister, Plaintiff was on his side of the conflict among their four older siblings.

49. Plaintiff subsequently became estranged from her four older siblings by the early 1980's due to conflicts in which she "sided" with Defendant against the four older siblings.

50. Defendant had specific knowledge of Plaintiffs isolation from her four older siblings and her increased reliance on him for support as her brother and only sibling that would speak with her both personally and in the management of her lands.

51. Plaintiff wrote Defendant in a letter dated 9/25/1999 referencing her older siblings: "Over the years, I have supported you and stood up for you against the family. And I am the one left holding the bag: for many years Marge and Keith would have nothing to with me, John refused to answer my phone call on his deathbed, and Jim, to this day, will not speak to me."

52. Plaintiff had a special trust in her older brother that allowed Defendant to influence the Plaintiff.

53. On the contrary to her relationship with her four older siblings, Plaintiff and Defendant both living in Southern California had a thriving relationship as brother and sister and in the co-mingling of their immediate families.

54. Between 1977 and 1983 Plaintiff and Defendant continued their bond over family get-togethers at Defendants home in Laguna Beach, Thanksgiving dinners with their families, family trips together to the cabin owned by Defendant in Lake Arrowhead, and family summers at the beach together in Newport Beach and Balboa.

55. Defendant filed claims in American Samoa in the late 1970's to early 1980's against BF Kneubuhl, the APK Trust that resulted in a 1982 settlement agreement among the six children of Adeline Pritchard Kneubuhl.

56. Plaintiff was the only one of the six children, the Parties to the 1982 settlement agreement that did not retain counsel or seek counsel to advise her.

- 6 -
COMPLAINT FOR DAMAGES

57. The 1982 settlement agreement was executed by both the Plaintiff and the Defendant in Orange County, on the same day, June 18, 1982.

58. Plaintiff relied on the advice of her older brother Mike Kneubuhl in signing the 1982 settlement agreement, not independent counsel.

59. The settlement agreement was executed by Plaintiff and Defendant at the office of Larry Arnold in Orange County, Defendants lawyer and brother of Susie Kneubuhl, wife of Defendant.

60. In the settlement agreement, Plaintiff would retain her 1/6th interests in lands known as Talimatau and Fagaiofu both situated in the Independent State of Samoa, hereinafter referred to as 'Samoa"and Fuamete, situated in American Samoa.

61. Plaintiffs older siblings, would relinquish their interests in these lands to Defendant, making Defendant the majority holder of interests in these lands with a 5/6th interest.

62. The 1982 agreement made the Plaintiff and Defendant tenants-in-common with an undivided interest with unequal interests.

63. Defendant managed the lands, Fuamete, Talimatau, and Fagaiofu that both Plaintiff and Defendant has or had an interest in together.

64. Defendant was a trustee of Plaintiff's lands Fuamete, Talimatau, and Fagaiofu that Plaintiff held 1/6th interest in with Defendant.

65. Defendant informed others he was the Trustee of Plaintiffs lands.

66. Defendant's son Mark Kneubuhl stated on September of 2014, Defendant was the Plaintiff's Trustee in land known as Fuamete: "My father was I guess the Trustee for them both and he would have five-sixth interest in that land. That's what I understood."

67. Plaintiff and her son understood and believed at all times pertinent that Mike was the Trustee of her interests. Defendant dealt with trust property in a manner that would be proper only by a trustee or a fiduciary.

68. Plaintiff's letter received by Defendant September 25th, 1999 confirms her belief Defendant was her fiduciary or alternatively her trustee: "I consider this loan to be secured by my property in Tutuila and Upolu, which is being held in trust by you."

COMPLAINT FOR DAMAGES

69. Defendant did not deny Plaintiffs statements of her property being held in trust by him in the series of 1999 letters between Plaintiff and Defendant.

70. Plaintiff and Defendant were tenants-in-common of property making them fiduciaries.

71. Defendant had a duty to protect and secure their common interest as fiduciaries.

72. By Defendants conduct, he was in all respects Plaintiffs fiduciary at all times pertinent.

73. Defendant had a duty, created by his undertaking to act for the benefit of Plaintiff as her fiduciary in the management of Plaintiffs lands she retained 1/6th interest of that were managed solely by Defendant for her benefit.

74. Title, ability to own land, type of land can be very complex in American Samoa and Samoa and is subject to unique requirements that are beyond the understanding of the average person.

75. Issues relating to title and other encumbrances in Samoa and American Samoa can be very complex and may take many years to resolve.

76. Defendant has advanced knowledge of land issues in both American Samoa and Samoa that Plaintiff did not possess and was reasonable for her to rely on Defendant to manage her lands.

77. Defendant marketed, negotiated, advertised, retained counsel, litigated and initiated lawsuits, ordered surveys at his sole discretion and decision, as Plaintiffs fiduciary for lands she held 1/6th interest in with him.

78. At all times relevant, Plaintiff never participated or effected decision in the management of her lands she held 1/6th interest of with Defendant.

79. Defendant had retained Patrick Fepulea'I without a formal agreement or Plaintiff signing a retainer to sell her lands at Talimatau.

80. At all times relevant, Plaintiff never signed a retainer agreement or otherwise provided approval with any lawyer Defendant had retained at his sole discretion to protect, sell, or otherwise oversee legal issues that pertained to her lands she held 1/6th interest in.

81. At all times relevant, Defendant made 100% of the decisions in lands Plaintiff and Defendant held together for her benefit.

82. At all times relevant, Plaintiff relied solely on her older brother, Defendant as her fiduciary to manage and make decisions on the lands held together for her benefit.

- 8 -

COMPLAINT FOR DAMAGES

83. In May of 2014 in Orange County, Defendant acknowledged Plaintiffs trust in him on managing her lands in explaining if he ever notified Plaintiff of the status of the lawsuit in Fuamete Defendant initiated and controlled he stated "In just general conversation from time to time when I saw her. She never questioned what was going on or anything over the years."

84. At all times relevant, Plaintiff placed such trust and confidence in her older brother, Defendant that when he advised her he sold her lands in Talimatau in April of 2005, after the fact, for $250,000 Plaintiff never questioned why he didn't obtain her approval, never requested to see the sales contract, never requested to see a settlement statement or similar document, never requested receipts for any of the expenses.

85. At all times relevant, Plaintiff did not ask her brother, Defendant for the items as stated above, because of her complete trust and confidence in him on managing her lands for her benefit as her fiduciary or alternatively as her trustee or alternatively because of their confidential relationship.

**Land at Fagaiofu, Samoa and Version of Deeds**

86. Fagaiofu is in Samoa and was gifted to all of Adeline Pritchard Kneubuhl's children in 1978 in an undivided 1/6th interest to 240 acres of land, and subsequent to the 1982 settlement agreement, Defendant would have transferred unto him the interest of the four older siblings for a 5/6th interest with Plaintiff retaining her 1/6th interest from the 1978 transfer.

87. Plaintiff first discovered the 1984 purported deed dated July 6, hereinafter referred to as "Version One" on May, 18, 2014.

88. Plaintiff learned Defendant sold her land at Samoa without her knowledge and claimed in his May 15th, 2014 deposition Plaintiff transferred unto him her interest in by way of Version One deed dated 1984.

89. Version One is a document representing to be a deed with Plaintiff as the Donor gifting her 1/6th interest in land in the District of A'ana Upolu, Samoa, hereinafter referred to as Fagaiofu.

90. Version One states Plaintiff gifted her interest in Fagaiofu "IN CONSIDERATION of the natural love and affection which the Donor bears towards the Donee..."

91. At all times relevant, Plaintiff did not believe Version One could be valid as she did not sign the document.

- 9 -
COMPLAINT FOR DAMAGES

92. At all times relevant, Plaintiff did not believe Version One could be accepted as a valid deed from any registrar or office of recording deeds due to its obvious defects of lacking a notarial seal or notarial stamp and no signature of the notary when shown Version one on May 18th of 2014.

93. The name "Debbie Sutton" is typed in with quotations below the statement that reads: "Signed by the said Frances Kneubuhl Opelle in the presence of: - " on Version One.

94. No location is identified on where Version One was executed.

95. No notarial seal or stamp is on Version One.

96. No handwritten signature of a notary is identified on Version One.

97. No acknowledgement was provided or has been provided for Version One.

98. No acknowledgement is on the official search record of Samoa.

99. A handwritten signature on the bottom right and a handwritten signature on the left margin appear on Version one.

100. Defendant denied any knowledge of Debbie Sutton on May 15, 2014 in Orange County, California stating: "I don't know any Debbie Sutton. I really don't. She must be someone that worked there in the —"

101. Defendant further stated on May 15, 2014 in Orange County, California "I have no idea who this person is or where it was signed by her."

102. Defendant stated on May 15, 2014 in Orange County, California, he paid no money for the transfer of land in Version one.

103. Defendant stated on May 15, 2014 in Orange County, California he did not see Plaintiff sign the deed.

104. Defendant stated on May 15, 2014 in Orange County, California upon being asked why did Plaintiff allegedly gift him her 1/6th interest in Fagaiofu "Frances' share was given – yeah, Frances went and decided, because of her love for me, to give me that property –"

105. Defendant stated on May 15, 2014 in Orange County, California regarding Plaintiff's alleged transfer of land for Fagaiofu from Version One "I don't know what was in Frances' mind when she went and decided to do that. I didn't beg her. I didn't hold a gun to her head or anything. It was on

her own account. And it says somewhere where she wrote to Drake and said I want to give my 1/6 interest to my brother in love or whatever, and is states right there."

106. Defendant did not provide a letter and stated on May 15, 2014 in Orange County, California he would provide said document if he could find it "I don't know where it is" but would provide it "absolutely, absolutely, if I can find it, but it is also in the deed, isn't it?"

107. At all times relevant, No such letter has ever been provided.

108. Defendant was later asked about the letter on September 2, 2015 and stated in Riverside County, California he does not have such letter.

109. At all times relevant, upon learning of Version One and statements had made by Defendant in May of 15, 2014 Plaintiff actively sought discovery on Version One.

110. Plaintiff was not at the deposition of Defendant on May 15th of 2014 and learned of some of the statements made about Version One Defendant made by her Counsel on May 18th, 2014 in Los Angeles.

111. On October 14, 2014 State of California Notary Public & Special Filing Section was emailed Version One.

112. In the October 14, 2014 email, State of California Notary Public & Special Filing Section was asked to verify notarial requirements in 1984 in California.

113. On October 14, 2014, State of California Notary Public & Special Filing Section responded to email with verifying the acknowledgement requirement in 1984 under California Civil Code section 1189.

114. On October 14, 2014 State of California Notary Public & Special Filing Section verified the notarial seal requirement in 1984 in Government Code Section 8207.

115. On October 14, 2014 State of California Notary Public & Special Filing Section verified the name Debbie Sutton as being a licensed notary in Orange County from 8/23/1983 – 8/21/1987, 8/22/1987-8/21/1991 and from 9/03/1991-09/02/1995.

116. Plaintiff does not know Debbie Sutton and has never met Debbie Sutton.

117. In December of 2014, a private investigator was retained in Orange County, California to find the "Debbie Sutton" named in Version One and any knowledge she had of Version One.

118. A Declaration of Kathryn D Sutton, was made on 1/7/2014 in Orange County, California and provided to the private investigator.

119. The Declaration of Debbie Sutton states she first met with the private investigator December 04, 2014 in regards to a "possible forgery of my signature."

120. The Declaration of Debbie Sutton states "the signature next to the Notary Public is NOT my signature."

121. The Declaration of Debbie Sutton states she did not know Plaintiff and has never met her in person.

122. The Declaration of Debbie Sutton states "I would have placed my Notary Seal on every document I legally signed."

123. The legal description of version one is: "All that piece of parcel of land situated in Falelatai in the District of A'ana Upolu Samoa being the Eastern portion of land claim No 941 and called Fagaiofu being all the land comprised in Court Grant No 1021 and being the land now registered in Volume I of Folio 31 of the Land Registrar of Western Samoa together with all rights of ways and easements and appurtenances thereunto belonging."

124. The Declaration of Debbie Sutton states "I would not have signed a document from another country that I was not familiar with."

125. The Declaration of Debbie Sutton states she worked for Susie Kneubuhl, wife of Defendant "in their home for a limited time doing filing when she worked for Chanel."

126. The Declaration of Debbie Sutton states she was introduced to Defendant and Susie Kneubuhl, wife of Defendant during her employment at Richard A Higbie (AKA Dick Higbie).

127. The Declaration of Debbie Sutton states she worked for Richard A Higbie (AKA Dick Higbie), in Newport Beach, California

128. Based on the Declarations of Debbie Sutton, Plaintiff became aware of potential fraud committed by Defendant based on what Plaintiff believed were now deliberate misstatements Defendant made under penalty of perjury denying his knowledge of Debbie Sutton whereas per the 1/7/2014 Declaration of Debbie Sutton.

129. Per Defendants statements on 10/08/2015 in American Samoa explaining co-defendants relationship with Dick Higbie "she was very good friends with Dick Higbie as well as the other three people who developed the hotels known as the Poly-Hi hotels in Tahiti. They all went to USC together."

130. Counsel was retained in Samoa approximately December of 2014 to research the registrar's office on any deeds relating to any transfer of Plaintiff to Defendant for her interest in Fagaiofu.

131. The certified search copy dated 12/15/2014 verified Version One as being on record in the registrar's office of Apia.

132. The certified search copy dated 12/15/2014 verified only Version One as being on record in the registrar's office of Apia.

133. The search verified Version One, with no handwritten signature of a notary, no seal or stamp, no acknowledgement, no disclosure of its execution was accepted by the registrar of Apia.

134. It is unknown to Plaintiff how Version One was accepted by the Registrar of Samoa and the Person or Person (s) that registered the land.

135. It is unknown to Plaintiff how Version One who filed or provided VERSION one or copy of VERSION to the Territorial Registrar of Samoa.

136. Receipt of registration of version one is dated July 30th, 1984.

137. At all times relevant, Plaintiff's discovery of Debbie Sutton was not disclosed to Defendant until approximately August of 2015.

138. As of the date of the filing of this complaint, Plaintiff has not disclosed her discovery of the official search records in December of 2014 of the registrar in Samoa to Defendant.

139. The copy of Version One provided to Plaintiff on May 18th, 2014 was of poor quality.

140. At all times relevant, ongoing requests by Plaintiff to make available the original of Version One for inspection were met with delay by Defendant.

141. Defendants delayed response to produce the original of Version in mid-December of 2014 was unimaginable, a new Version of what defendant claimed was a copy from the original of Version one, hereinafter referred to a version two.

142. At all times relevant, Plaintiff had never seen the Second Version prior to mid-December of 2014.

143. Version Two had material additions, a handwritten Signature for Debbie Sutton and a notarial "official seal."

144. A notarial seal and a handwritten signature are in addition to other items, required elements needed to be a valid deed and a recordable instrument.

145. Defendant subsequently provided to Plaintiff 4 pages of documents, 1) an acknowledgement notarized by Beth Schuller 1/26/2015 in Riverside County, California 2) Verification from the Secretary of State of California dated March 2, 2015 verifying notary Beth Schuler was a notary in California on 1/26/2015 3) a copy of the receipt of a deed from the registrar of Samoa dated July 11, 1984 4) a new version of version one, Version two.

146. Disregarding Defendants handwritten declaration inserted on item 3, Plaintiff's search of the official record of the registrar of Samoa performed 12/2014 already confirmed item 3, the receipt of the registrar of a deed in July of 1984.

147. Defendant added a handwritten declaration on or about January 26, 2015 in Riverside County on the copy of the receipt from the land registrar of Samoa California stating: "I, Douglas Crane Kneubuhl, certify that these are a true copy of the original documents" signed by Defendant and underneath the signature states "P.S. this document will be used in American Samoa, a U.S.A Territory in the South Pacific."

148. The Statement "P.S. this document will be used in American Samoa, a U.S.A Territory in the South Pacific" is placed beneath Defendant's signature and it materially different than the writing of the statement above with Defendants signature.

149. Defendants intent of producing item 1 and item 3 above in consideration of his overall conduct was to confuse and or fool Plaintiff that an acknowledgement for the 1984 deed now exists with the 1/26/2015 made in California corrects some of the more obvious defects of version one.

150. Defendant at some point only known to Defendants, caused the creation of version 2 to attempt to cure the more obvious defects of version one.

151. Version Two is not the same document or copy of Version One.

COMPLAINT FOR DAMAGES

152. Version two has the following added: a notarial "official seal" for Debbie Sutton stamp, an alleged handwritten signature of Debbie Sutton, some type of stamp or seal on the left margin.

153. Version two also has the following changes: the name in quotations of "Debbie Sutton" removed the quotations and capitalized the typewritten name as DEBBIE SUTTON; the initials or signature of unknown person appearing on the lower bottom right have been removed in Version two; the statement "CERTIFIED  that the foregoing Alienation is within the provision of the Alienation of Freehold Land Act of 1972" and the  signature of unknown person above "Solicitor for the Donee" has been removed or is not visible.

154. At all times relevant, No official record exists with Version Two filed, anywhere.

155. Version Two could have been created at any date, including up until the time it was provided to Plaintiff in mid-December of 2014.

156. At all times relevant, Version Two was a forgery by Defendants to give the appearance of a valid deed for the transfer of Fagaiofu .

156. At all times relevant, Discovery of the official search record of any transfers of Fagaiofu from Plaintiff to Defendant did not show Version Two on record in Samoa.

157. Defendant made no statement regarding Version Two in his deposition in May of 2015.

158. Defendant made a notarized affidavit in Irvine, California, County of Orange, on March 11th, 1999, certifying Version one, marked at the top of Version one as exhibit "F" in his affidavit as the document that transferred Plaintiff's interest in Fagaiofu to him.

159. Defendant's notarized affidavit in Irvine, California, County of Orange, on March 11th, 1999, was intended for the Supreme Court of Samoa to declare Defendant the sole owner of 159, 160. Fagaiofu and remove Plaintiffs interest in Fagaiofu to be as a statement of facts in The Supreme Court of Samoa.

161. Defendant's notarized affidavit in Irvine, California, County of Orange, on March 11th, 1999, certifying Version One was to convey and to effect title by transfer of Plaintiffs 1/5th interests in Fagaiofu for his benefit.

162. Defendants affidavit executed in Irvine, California, County of Orange, on March 11th, 1999 was effectively testimony, false testimony, done in Orange County, California.

- 15 -

1    163. At all times relevant, Plaintiff had no knowledge of the 1999 litigation in Fagaiofu until

2    approximately September of 2014 when Plaintiff received the exhibits of the Defendant.

3    164. At all times relevant, Defendant concealed the 1999 Supreme Court of Samoa case and

4    decision from Plaintiff.

5    165. Plaintiff and Defendant had communications with each other in 1999 and Defended concealed

6    from Plaintiff he was secretly litigating Fagaiofu in the Supreme Court of Samoa to have himself

7    declared as the sole owner the land.

8    166. More information and specific knowledge about the 1999 Supreme Court of Samoa is under

9    the control of Defendant.

10   167. At all times relevant, Plaintiff had no knowledge of the 1999 litigation in Fagaiofu until

11   approximately September of 2014 when Plaintiff and family received the exhibits of the Defendant.

12   168. Debbie Sutton was showed Version Two on September 2015 in Riverside County, California.

13   169. Debbie Sutton denied it was her signature on Version Two in Riverside County, California

14   170. Debbie Sutton denied having met Plaintiff again in deposition on September in Riverside

15   County, California.

16   171. Debbie Sutton reaffirmed she worked for Susie Kneubuhl, wife of Defendant in the 1980's for

17   a few weeks.

18   172. On 09/02/2015 Defendant stated document marked "F" on the top of the page from the 1999

19   Samoa litigation was prepared by Murray Drake.

20   173. On 09/02/2015 in Riverside County, of California, Defendant abandoned his prior statement on

21   May of 2014 from having "no idea" to who Debbie Sutton is to admitting to knowing Debbie

22   Sutton.

23   174. On 09/02/2015 in Riverside County, of California Defendant abandoned his prior statement on

24   May of 2014 on the whereabouts of the execution of the purported 1984 deed to being done in

25   "Newport Beach, Balboa Island" on July 11, 1984 to now being executed at "Debbie Sutton's

26   office."

27   175. Both versions of the deed do not contain any indication of the location of their execution.

28

176. On 09/02/2015 in Riverside County, of California, Defendant abandoned his prior statement the motivation of the gift deed was for Plaintiff's "love and affection of me" on the gift deed to have been motivated by a debt from Plaintiff's deceased spouse.

177. On 09/02/2015 in Riverside County, of California Defendant changed his prior statement from May of 2015 stating he was a there when one of the purported deeds was signed "that is where we took the document to be signed" in reference to "Debbie Sutton's office" in Balboa Island.

178. On 09/02/2015 in Riverside County, of California Defendant acknowledged to using Debbie Sutton's notary services in the past.

179. A clear copy was never provided directly by Defendant to Plaintiff of version one, preventing a clear, legible document, specifically the left margin of the document and the stamps placed on the left margin.

180. On September 14, 2015 a witness for Defendant, Linda Mitchell believed to be residing in California provided a clear copy of a copy of Version two that was given to Plaintiff.

181. The clear copy of Version Two provided by Linda Mitchell provided the ability to read the stamps on the left side of the document that had been obscured from reading or determining the words on the left side on Defendants prior copy given to Plaintiff.

182. The stamp on Version two, states "THICK-EDGED COWRY – CYPRAEA CAURICA –– SAMAO I SISIFO – COURVOISIER."

183. The stamp on Version two, a documented purported to have been executed in 1984 is from a commemorative stamp in Western Samoa in 1978.

184. There are two valid deeds filed in the registrar of Samoa in 1978 and provided by Defendant as exhibits in May of 2015 and provided to Plaintiff around September of 2015.

185. The two valid deeds executed and filed in the registrar of Samoa in 1978 are for the lands in Samoa, Talimatau and Fagaiofu.

186. Based on the production of exhibits by Defendant in May of 2015, between approximately 1977 and 1978 engaged in ongoing discovery over lands held by Plaintiffs and Defendants mother Adeline Pritchard Kneubuhl in Samoa.

- 17 -

COMPLAINT FOR DAMAGES

187. Plaintiff's mother executed two separate deeds gifting all her interest to her six children in Talimatau and Fagaiofu on September 9th, 1978.

189. Receipt of Fagaiofu from the registrar of Samoa is noted as October 5th, 1978.

190. The deeds were stamped by the registrar in 1978 and returned to the Defendant and other siblings, but not to Plaintiff.

191. It is unclear from the copy provided by Defendant if the stamp is the same as provided on Version two containing the name of the stamps the registrar used in the 1978 gift deeds of lands in Samoa.

200. The official search record of December 2014 was re-verified again October of 2015 to be correct.

**FIRST CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

201. PLAINTIFF re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 200.

202. Defendant owed a fiduciary duty to Plaintiff as tenants-in-common of property, trustee by conduct of Defendant and understanding of Plaintiff and as fiduciary Defendant had a duty of candor, undivided loyalty, full disclosure and as tenants-in-common of property a duty to protect and secure their common interest.

203. Defendant breached his fiduciary duty to Plaintiff by the acts including but not limited to those acts of self-dealing, non-disclosure, malfeasance and misfeasance described herein, that were designed to convey Plaintiffs interest and rights at Fagaiofu and the fraudulent transfer of Plaintiffs interests to Defendant and Defendants subsequent sale of Plaintiff lands in Fagaiofu.

204. As a direct and proximate result of Defendants breach of fiduciary duty, Plaintiff has been harmed as alleged herein in an amount in excess of $500,000, in an amount to be proved at trial.

**SECOND CAUSE OF ACTION**

**FRAUD - CONCEALMENT**

205. PLAINTIFF re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 204.

- 18 -

206. Defendant has suppressed and concealed certain material facts which he had a duty to disclose to Plaintiff.

207. In Particular, Defendant knew and concealed from Plaintiff the following material facts:

208. a.  Defendant forged or caused to be forged Version One of purported deed in Orange County, California, which states to convey Plaintiffs 1/6th interest of 240 acres of land in Fagaiofu to Defendant, at a date not known to Plaintiff but known to Defendant, at some point in time before July 30th, 1984.

209. b. Version one of purported deed was filed or caused to be filed by Defendant and accepted with the territorial registrar July of 1984 as acknowledged by the official search record of the registrar of Samoa.

210. c. On July xx, 1999, Defendant executed an affidavit in Irvine, Orange County, California, to be submitted as testimony and or evidence with Supreme Court of Samoa to declare himself the sole owner of Fagaiofu attesting to Version One of purported deed to support Plaintiff's transfer of her 1/6th interest in Fagaiofu to himself.

211. e. As a result of Defendants notarized affidavit in and verification of Version one deed as being the instrument that conveyed Plaintiff's interest in Fagaiofu to him, The Supreme Court of Samoa verified Defendant as the sole owner of Fagaiofu.

212. In 2008 Defendant entered into agreement to sell Fagaiofu to Halleck Investments and finalized the sale November of 2012 for $2.4 million.

213. Defendant had a fiduciary duty to and/or confidential relationship with Plaintiff to disclose these material facts as a result of his fiduciary relationship and/or confidential relationship to Plaintiff.

214. Defendant intentionally concealed, suppressed, and/or failed to disclose material facts with the intent to induce reliance and to defraud Plaintiff.

215. At all times, Plaintiff was unaware of the material facts that were suppressed and/or concealed by Defendants. If Plaintiff had been aware, she would have taken steps to protect her interest in Fagaiofu and to protect against her brother's Defendants wrongful and deliberate conduct of wrongly conveying her interest in land unto himself and subsequently selling.

COMPLAINT FOR DAMAGES

1  216. The aforementioned conduct of the Defendant constitutes fraud, intentional concealment of

2  material facts known only to Defendant and within his control, with the intent on the part of the

3  Defendant of inducing reliance and thereby damaged Plaintiff by transferring her property and

4  interest and/or legal rights or otherwise causing injury, and was despicable, malicious, oppressive

5  and with intentional conduct that subjected Plaintiff to cruel and unjust hardship in conscious

6  disregard, of Plaintiff's rights, so as to justify an award of exemplary and punitive damages in a sum

7  according to proof at trial.

8  WHEREFORE, PLAINTIFF prays for relief as set forth below

9

10  **Statute of Limitations—Delayed Discovery**

11  217. Plaintiffs accrual for cause of action is postponed until Plaintiff had reason to discover, the

12  cause of action. Plaintiffs had reason to discover the cause of action when a document purporting to

13  be a deed conveying her interest in Fagaiofu by way of gift to her brother - Defendant, version one

14  that she had never seen prior to May 18th, of 2014 in Los Angeles. The existence of this document,

15  version one was unknown by Plaintiff and once discovered a document existed that may have

16  caused a wrongful transfer of her land in Fagaiofu Plaintiff thereafter engaged in active discovery to

17  discover the cause of action.

18  WHEREFORE, PLAINTIFF prays for judgment against Defendant as follows:

19  1.      For general and special damages according to proof

20  2.      Pre-judgement and post judgement interest on such monetary relief

21  3.      For costs of suit, including expert cost

22  4.      For punitive damages according to proof

23  5.      The costs of bringing this suit, including reasonably attorney fees

24  6.      For leave to amend as would be just

25  7.      For such other and further relief as the court deems just and proper

26

27

28

COMPLAINT FOR DAMAGES

1   DATED: MAY 17, 2017

2

3                              By:   *Frances K. Opelle*

4                                    Frances K. Opelle, in Pro Per Status

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28